**No. 25-cv-5009**

# In the United States District Court
# For the Southern District of Texas

TWO RIVERS COFFEE, LLC AND STEVEN SCHREIBER,

*APPELLANTS*

v.

NELKIN & NELKIN P.C.

*DEBTOR–APPELLEE*

On Appeal from the Bankruptcy Court for the United States District
Court for the Southern District of Texas, No. 23-34054

## BRIEF OF APPELLANTS

AVI MOSHENBERG
Texas Bar No. 24083532
avi.moshenberg@lmbusinesslaw.com
LAWSON & MOSHENBERG PLLC
2301 Commerce Street, Suite 200
Houston, Texas 77002
(713) 449-9644
*Counsel for Appellants*

## Certificate of Interested Persons

The undersigned counsel certifies that the following listed persons and entities under Rule 8012 have an interest in the case's outcome. They are listed so the Court can evaluate possible disqualification or recusal.

### Appellants

Steven Schreiber (individually and on behalf of Eugene Schreiber)
Two Rivers Coffee, LLC
(Together *"the Two Rivers Parties"*)

### Counsel for Appellants

Avi Moshenberg
Nicholas Lawson
Lawson & Moshenberg PLLC

Raphael Rosenblatt
Rosenblatt Law, P.C.

### Appellee

Nelkin & Nelkin, P.C.

### Counsel for Appellee

Johnie Patterson
Miriam Groot
Walker & Patterson, P.C.
4815 Dacoma
Houston, Texas 77092
Telephone: 713-956-5577


By:   */s/ Avi Moshenberg*
      Avi Moshenberg
      Attorney of Record for Appellants

ii

## Statement Regarding Oral Argument

Appellants respectfully request oral argument. Given the complexities of this case, oral argument will aid the Court in reaching its decision.

## TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTERESTED PARTIES ............................................... ii

STATEMENT REGARDING ORAL ARGUMENT .................................. ii

TABLE OF CONTENTS ..................................................................... iv

TABLE OF AUTHORITIES ................................................................ vi

JURISDICTIONAL STATEMENT ........................................................ xi

ISSUES PRESENTED ON APPEAL ...................................................... xii

STATEMENT OF THE CASE ............................................................. 1

I.  The Schreibers retain Nelkin to represent them in litigation involving Two Rivers Coffee—and a dispute erupts over fees. ........ 1

II.  The Schreibers try to resolve the Charging Lien and move on following the *Friedman* settlement. ............................................... 3

III.  Nelkin petitions for bankruptcy after the EDNY court orders an evidentiary hearing on the fee dispute. ..................................... 4

IV.  Nelkin agrees to lift the stay on the fee-dispute litigation in EDNY ................................................................................................ 6

V.  The bankruptcy court holds the Two Rivers Parties and Rosenblatt in contempt. ............................................................... 9

VI.  The Two Rivers Parties Appeal. ...................................................... 10

SUMMARY OF ARGUMENT ................................................................ 10

STANDARD OF REVIEW .................................................................... 13

ARGUMENT AND AUTHORITIES .......................................................13

I.    The Court should reverse the Contempt Order because the
      Two Rivers Parties did not violate the discharge injunction. ........15

      A.    A discharge for cause forfeits Nelkin's right to attorney's
            fees and is a defense to its Charging Lien. ............................15

      B.    The Charging Lien did not transform the Two Rivers
            Parties into creditors. ............................................................20

II.   The Court should reverse the Contempt Order because the
      Two Rivers Parties had fair grounds to believe they complied
      with the discharge injunction. .....................................................28

      A.    The Two Rivers Parties were not unreasonable for
            believing they were bringing a defense and not a claim
            against Nelkin's property. ......................................................30

      B.    The Two Rivers Parties were not unreasonable for
            relying on the EDNY court's order that the *Friedman*
            settlement was not Nelkin's property. ...................................32

      C.    The Two Rivers Parties were not objectively
            unreasonable for concluding that the bankruptcy court
            did not discharge the charging-lien dispute. ........................34

CONCLUSION AND RELIEF REQUESTED .......................................37

CERTIFICATE OF SERVICE ..............................................................38

CERTIFICATE OF COMPLIANCE ......................................................39

APPENDIX ...........................................................................................40

# TABLE OF AUTHORITIES

*Page(s)*

**UNITED STATES SUPREME COURT CASES:**

*Taggart v. Lorenzen,*
    587 U.S. 554 (2019). ........................................................ 14, 28, 27

**UNITED STATES COURT OF APPEALS CASES:**

*In re Kreisler Group, Inc.,*
    648 F.2d 86 (2d Cir.1981) ............................................................... 21

*In re Manville Forest Prods. Corp.,*
    896 F.2d 1384 (2d Cir. 1990) ................................................... 34, 36

*In re Perry,*
    345 F.3d 303 (5th Cir. 2003) ......................................................... 13

*Joffe v. Javerbaum Wugaft Hicks Kahn Wikstrom & Sinins, P.C.,*
827 Fed. Appx. 35 (2d Cir. 2020) ...................................................... 16, 18

*Life Techs. Corp. v. Govindaraj,*
    931 F.3d 259 (4th Cir. 2019) ........................................................ 29

*Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.,*
    370 F.3d 259 (2d Cir. 2004) ................................................... 16, 19

**UNITED STATES DISTRICT COURT CASES:**

*Amerinor, LLC v. Sanara Wellness LLC,*
    No. A-20-CV-01022-JRN,
    2021 WL 2679044 (W.D. Tex. Mar. 31, 2021) ............................... 31

*Cruz v. Olympic Trails Bus Co.,*
    No. 99 CIV. 10861,

2002 WL 1835440 (S.D.N.Y. Aug. 8, 2002) ................................... 19

*El Nabi v. City of New York,*
    779 F. Supp. 3d 428 (S.D.N.Y. 2025) ............................................. 19

*In re Harley & Browne,*
    957 F. Supp. 44 (S.D.N.Y. 1997) ................................................. 22

*Joffe v. King & Spalding LLP,*
    337 F. Supp. 3d 366 (S.D.N.Y. 2018) ...................................... 16, 18

*McDermott v. Great Am. All. Ins. Co.,*
    No. CIVA5:02CV0607
    2006 WL 2038452 (N.D.N.Y. July 18, 2006)................................. 19

*Ocean World Lines, Inc. v. Atlant (USA) Inc.,*
    2008 WL 1776415 (S.D.N.Y. Apr.17, 2008) ................................. 22

*Sellick v. Consol. Edison Co. of New York, Inc.,*
    No. 15-CV-9082 (RJS),
    2017 WL 1133443 (S.D.N.Y. Mar. 23, 2017)................................ 18

UNITED STATES BANKRUPTCY COURT CASES:

*In re City of Detroit*
    614 B.R. 255 (Bankr. E.D. Mich. 2020)......................................... 14

*In re McKinney,*
    No. 21-50046,
    2022 WL 1632156 (Bankr. N.D. Tex. Apr. 28, 2022).................... 28

*In re Ramirez,*
    528 B.R. 580 (Bankr. S.D.N.Y. 2015)............................................ 17

## STATE COURT CASES:

*Access Point Med., LLC v. Mandell,*
106 A.D.3d 40 (1st Dept. 2013) ................................................................22

*Bailey v. Murphy,*
136 N.Y. 50 (1892) ..............................................................................19

*Callaghan v. Callaghan,*
48 A.D.3d 500 (2d Dep't 2008) .........................................................18

*Campagnola v. Mulholland, Minion & Roe,*
76 N.Y.2d 38 (1990) ...........................................................................19

*CPMI, Inc. v. Kolaj,*
137 A.D.3d 953 (2d Dep't 2016) ......................................................18

*Crowley v. Wolf,*
281 N.Y. 59 (1939) ..............................................................................24

*Dagny Mgmt. Corp. v. Oppenheim & Meltzer,*
199 A.D.2d 711 (3rd Dep't 1993).............................................. 18, 19

*Fischer-Hansen v. Brooklyn Heights RR,*
173 N.Y. 492 (1903) ................................................................... 19, 30

*J.K.C. v. T.W.C.,*
966 N.Y.S.2d 812 (Sup. Ct. Monroe County 2013) ........................27

*LMWT Realty Corp. v. Davis Agency,*
85 N.Y.2d 462 (1995)....................................................... 25, 26, 27

*Lumen Ltd. v. Quazi,*
No. 613812-21 (Sup. Ct. Nassau County Aug. 28, 2023)...............22

*Marschke v. Cross,*
82 A.D.2d 944 (1981) ..........................................................................24

*Miller v. Kassatly*,
　216 A.D. 2d 260 (1st Dep't 1995) ................................................. 17

*Orendick v. Chiodo,*
　272 A.D.2d 901 (4th Dep't 2000) ................................................. 17

*People v. Keeffe*,
　50 N.Y.2d 149 (1980) ........................................................... 17, 21

*Robinson v. Rogers*,
　237 N.Y. 467 (1924) ............................................................ 17, 21

*Rooney v Second Ave R.R. Co.*,
　18 NY 368 (1858) ............................................................... 17, 21

*Schreiber et al. v. Friedman et al.*,
　No. 15 CV 6861,
　2025 WL 1616659 (E.D.N.Y. June 8, 2025) ..................................... 7, 8

*Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*,
　302 A.D.2d 183 (1st Dep't 2002) .......................... 17, 20, 22, 23, 24

*State Auto v. Trachtenberg*,
　No. 710980/2023, 2024
　(Sup. Ct. Queens County May 6, 2024) ......................................... 23

*Sprole v. Sprole*,
　151 A.D.3d 1413 (3d Dep't 2017) ............................................... 17

*Teichner by Teichner v. W & J Holsteins, Inc.*,
　64 N.Y.2d 977 (1985) .......................................................... 16, 19

*Wasserman v. Wasserman*,
　119 A.D. 3d 932 (2d Dep't 2014) ............................................... 17

*Williams v. Hertz Corp.*,
　75 A.D.2d 766 (1st Dep't 1980) ................................................ 19

ix

*Williams v. Hertz Corp.*,
    59 N.Y.2d 893 (1983) ....................................................................... 24

**UNITED STATES STATUTORY PROVISIONS:**

11 U.S.C. § 101(9) ............................................................................... 21

28 U.S.C. § 158(a) ................................................................................xii

28 U.S.C. § 158(c)(2) ............................................................................xii

28 U.S.C. § 1412 ..................................................................................... 8

**STATE STATUTORY PROVISIONS:**

N.Y. Judiciary Law § 475 (McKinney) .................................. 16, 17, 19, 24

**COURT RULES:**

Federal Rules of Bankruptcy Procedure Rule 8001(a)

## Jurisdictional Statement

Federal district courts have jurisdiction to hear appeals from bankruptcy judges' final judgments. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). The bankruptcy court issued a final order finding appellant in contempt of its discharge order on October 1, 2025. Appellants timely filed a Notice of Appeal under 28 U.S.C. § 158(a) and Rule 8001(a) of the Federal Rules of Bankruptcy Procedure.

## Issues on Appeal

The District Court reviews the bankruptcy court's legal conclusions *de novo* and its fact-findings under a clearly erroneous standard.[1] In doing so, the Court should consider two issues on appeal:

### Issue I (Violation of Discharge Injunction)

Under New York law, a former client's assertion that their attorney was discharged for cause is a defense to the attorney's enforcement of a charging lien—not an affirmative claim for money damages against the attorney. Here, the Two Rivers Parties moved to vacate Nelkin's charging lien on the ground that Nelkin was discharged for cause, seeking only to defend against Nelkin's claim to their settlement proceeds held in the EDNY court's registry. Did the bankruptcy court err in holding that the Two Rivers Parties violated the discharge injunction by treating their charging-lien defense as an affirmative claim against the debtor's estate?

### Issue II (Fair Ground of Doubt)

Under Supreme Court precedent, civil contempt for violating a discharge injunction is improper where there is a "fair ground of doubt" as to whether the party's conduct was lawful—an objective standard that will "often" be met because discharge orders "operate against a complex statutory backdrop." Here, the Two Rivers Parties relied on (1) longstanding New York precedent treating discharge for cause as a defense rather than a claim, (2) the EDNY court's ruling that the Schreibers had "no affirmative claims" against Nelkin and that the settlement proceeds were likely not estate property, and (3) the bankruptcy court's own prior order lifting the stay so the parties could "conclude" the EDNY fee-dispute litigation. Was it objectively unreasonable—so as to support a finding of civil contempt—for the Two Rivers Parties to believe that pursuing their discharge-for-cause motion did not violate the discharge injunction?

---

[1] *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003).

## Statement of the Case

### I. The Schreibers retain Nelkin to represent them in litigation involving Two Rivers Coffee—and a dispute erupts over fees.

In May 2015, Steven Schreiber and Eugene Schreiber engaged with the law firm, Nelkin & Nelkin, P.C. to represent them on a contingency-fee basis in a dispute involving their company, Two Rivers Coffee.[2] The underlying dispute—the *Friedman* case—was filed in the Eastern District of New York in December 2015.[3] And after years of litigation and settlement talks, the case was settled (in principle) in August 2018.[4]

Around the time of the August 2015 settlement, a dispute arose between the Two Rivers Parties and Nelkin over the calculation of Nelkin's contingency fee.[5] On August 15, 2018, Nelkin served a "Notice of Charging Lien" seeking to enforce its charging lien against its former clients' settlement proceeds.[6] The Charging Lien didn't specify the fee amount to which Nelkin claimed it was owed.[7] It simply blocked the Two

---

[2] Doc. 5-8, at 34–35. The Schreibers and Two Rivers Coffee are collectively "The Two Rivers Parties."

[3] Doc. 5-8, at 35.

[4] Doc. 5-8, at 35.

[5] Doc. 5-8, at 35.

[6] Doc. 5-8, at 35; Doc. 5-4, at 82–87.

[7] Doc. 5-4, at 82–87.

Rivers Parties from benefitting under *Friedman* settlement until the Charging Lien was satisfied.[8] Around that time, the Two Rivers Parties asked the judge for a conference because they felt the fees Nelkin sought were unreasonable.[9]

On August 30, 2018, the EDNY court held a status conference.[10] Nelkin continued to represent the Schreibers in the unresolved underlying lawsuit—which, while not finalized, a settlement had been agreed upon in principle.[11] Unbeknownst to the Two Rivers Parties or even the Court, who attended the August 30, 2018 conference, Nelkin had sued the Schreibers earlier that morning to recover its contingent fee.[12]

At the conference, the EDNY court discharged Nelkin from representing the Schreibers due to the conflict of interest Nelkin created.[13] (That was without even knowing that Nelkin had sued against

---

[8] Doc. 5-4, at 86–87. To be clear, the EDNY is presently holding in escrow approximately $1.78 million. Nelkin claims that its fees range from $8 million to $13.5 million, though no fee calculation has ever been provided or explained. Either way, their fee claim well exceeds the amount held by the EDNY.

[9] Doc. 5-8, at 35; Doc. 5-4, at 27–29.

[10] Doc. 5-5, at 101.

[11] Doc. 5-5, at 101.

[12] Doc. 5-5, at 55–91; Doc. 5-5, at 102–03.

[13] Doc. 5-5, at 102–03.

its clients.[14]) When Judge Orenstein finally found out, he clarified that had he known Nelkin had just sued its own clients on the morning of the status conference, he wouldn't have discussed whether anyone consented to the voluntary termination of Nelkin's representation of the Schreibers but would have disqualified Nelkin entirely.[15]

## II. The Schreibers try to resolve the Charging Lien and move on following the *Friedman* settlement.

With a fee dispute in full swing, Nelkin and Two Rivers Parties reached a stipulated agreement that the settlement funds would remain in the court registry until the EDNY court resolved the issue.[16] Weeks later, Two Rivers Parties retained attorney Raphael Rosenblatt to resolve Nelkin's Charging Lien.[17] Following the EDNY court's directive, Rosenblatt submitted a letter explaining why his client believed Nelkin should be discharged for cause and then moved to vacate Nelkin's charging lien *for cause* on the Schreibers' behalf.[18]

---

[14] Doc. 5-5, at 102–03.

[15] Doc. 5-5, at 102–03.

[16] Doc. 5-8, at 35; Doc. 5-6, at 16–23.

[17] Doc. 8-5, p. 80.

[18] Doc. 5-4, at 36–37.

3

The Two Rivers Parties and Nelkin litigated the issue, and Judge Orenstein found that Nelkin had forfeited its charging lien in part because suing its client while still representing them warranted discharge for cause.[19] Nelkin appealed, and the District Court Judge Amon vacated the finding in part, holding that the court should've conducted an evidentiary hearing rather than ruling on the papers.[20] The parties proceeded to discovery in the EDNY fee dispute, but the evidentiary hearing has not yet been rescheduled.

### III. Nelkin petitions for bankruptcy after the EDNY court orders an evidentiary hearing on the fee dispute.

On August 25, 2023, Nelkin petitioned for bankruptcy in the Southern District of Texas.[21] Nelkin informed the EDNY court that it was a debtor in a Texas bankruptcy proceeding and that the fee dispute was automatically stayed.[22]

While the charging lien litigation was stayed, Nelkin filed a series of documents in the bankruptcy. Nelkin listed its charging lien as an

---

[19] Doc. 5-6, at 32–43.

[20] Doc. 5-6, at 44–52.

[21] Doc. 5-8, at 36; Doc. 5-2, at 1–5.

[22] Doc. 5-7, at 101.

*asset* with a value exceeding $12.75 million and indicated that the Schreibers had pre-petition claims against Nelkin.[23]

The Two Rivers Parties did not file a proof of claim in the bankruptcy. Instead, on November 1, 2023, the Two Rivers Parties (through Rosenblatt and local counsel) moved the bankruptcy court to either declare that the stay didn't apply or lift the stay to let the charging-lien dispute in EDNY to proceed.[24] Rosenblatt argued that "[Nelkin] initiated the claim for fees," so the case in the [EDNY] was "not a cause of action against the Debtor" as the Schreibers weren't seeking anything from Nelkin but instead seeking the release of their settlement proceeds from the EDNY registry.[25]

## IV. Nelkin agrees to lift the stay on the fee-dispute litigation in EDNY.

Before the bankruptcy court heard the lift-stay motion, the Two Rivers Parties and Nelkin agreed to mediate their fee dispute.[26] The agreement provided that, if a mediator determined that an impasse had

---

[23] Doc. 5-8, at 46

[24] Doc. 5-7, at 159; *see also* Case No. 23-34054, at Doc. 56  (Appendix 2).

[25] Doc. 5-7, at 159; *see also* Case No. 23-34054, at Doc. 56, ¶ 27 (Appendix 2).

[26] Doc. 5-7, at 184–86.

been reached, the parties would notify the bankruptcy court and the stay would be lifted or modified to permit the parties to proceed in the EDNY court.[27] The bankruptcy court effectuated this agreement in an order.[28] About three weeks later, despite the parties' mediation efforts, the mediator notified the bankruptcy court of an impasse.[29]

Nelkin then tried to repudiate the order and delay the hearing Judge Amon had ordered in the EDNY case.[30] The Two Rivers Parties moved to enforce the agreed order.[31] The bankruptcy court held that the prior agreed order was self-executing and that because of the mediator's notice of impasse, the stay was terminated "only to the extent that the Parties may *conclude* the fee-dispute litigation pending" in the *Friedman* case in EDNY.[32]

---

[27] Doc. 5-7, at 184–85.

[28] Doc. 5-7, at 184–86.

[29] *See* Case No. 23-34054, at Doc. 108 (Appendix 3); *see also* Case No. 23-34054, at Doc. 257, at 5 (Appendix 4).

[30] *See* Case No. 23-34054, at Doc. 257, at 5–8 (Appendix 4).

[31] *See* Case No. 23-34054, at Doc. 257, at 5–8 (Appendix 4).

[32] *See* Case No. 23-34054, at Doc. 257, at 8 (Appendix 4).

About a month later, the EDNY court scheduled the evidentiary hearing in the charging-lien dispute for October 2024.[33] About two months before the evidentiary hearing, however, Nelkin moved the EDNY court to transfer the fee-dispute case to the bankruptcy court.[34] The EDNY court postponed the evidentiary hearing until it ruled on Nelkin's venue-transfer motion.[35]

Months later, on February 14, 2025, the bankruptcy court confirmed the Chapter 11 plan.[36] Three days later, while Nelkin's venue-transfer motion was still pending, Rosenblatt sent a letter to the EDNY court advising it that a confirmation order had been entered:

> As this relates to the pending Motion to Transfer Venue [Docket Entry No 742] filed by the Nelkins, a determination of whether any fees are due and owing to the Nelkins was not a condition precedent to confirmation of the Bankruptcy Plan. Now that the Plan has been confirmed, the only issue remaining before this Court is the pending fee dispute that can proceed without regard to the Texas proceeding, which have now confirmed a Plan.[37]

---

[33] *Schreiber v. Friedman*, No. 15 CV 6861, 2025 WL 1616659, *5 (E.D.N.Y. June 8, 2025) (Appendix 1).

[34] *Id.* (Appendix 1).

[35] *Id.* (Appendix 1).

[36] Doc. 5-8, at 36.

[37] Doc. 5-4, at 90–91.

Nelkin responded with several letters of its own, again urging the EDNY court to transfer the case to the bankruptcy court.[38] On June 8, 2025, the EDNY court denied Nelkin's motion to transfer.[39] It issued a robust decision that found, among other things, that the Schreibers' pending motion to vacate Nelkin's charging lien for cause was not a "core" issue that warranted transfer to the bankruptcy court under 28 U.S.C. § 1412.[40] It also determined that the motion to vacate the charging lien "do[es] not involve any affirmative claims by the Schreibers against [Nelkin] nor are the Schreibers endeavoring to collect on any potential debt or obligation from [Nelkin] that would be discharged by the confirmed Plan."[41]

After the EDNY court denied Nelkin's venue-transfer motion, Nelkin pivoted. It moved the bankruptcy court to enforce the order confirming the bankruptcy plan and to hold the Two Rivers Parties (and Rosenblatt) in contempt.[42]

---

[38] *Schreiber*, 2025 WL 1616659, *5 (Appendix 1).

[39] *Id.* at *23 (Appendix 1).

[40] *Id.* at **5–23 (Appendix 1).

[41] *Id.* at *12 (Appendix 1); Doc. 5-8, at 56; *Schreiber v. Friedman*, No. 15 CV 6861, 2025 WL 1616659 (E.D.N.Y. June 8, 2025) (Appendix 1).

[42] Doc. 5-8, at 36–37.

## V. The bankruptcy court holds the Two Rivers Parties and Rosenblatt in contempt.

At Nelkin's urging, the bankruptcy court held that the attorney's fees portion of the *Friedman* settlement belonged to Nelkin's bankruptcy estate and that the Schreibers were enjoined from seeking those proceeds under the bankruptcy court's discharge injunction because they had not filed a proof of claim.[43] Thus, the bankruptcy court held that the February 17th letter to the EDNY court was the continued prosecution of a discharged cause of action against Nelkin's bankruptcy estate, which violated the discharge injunction.[44]

The Contempt Order requires Rosenblatt, jointly and severally with the Schreibers, to pay Nelkin's attorney's fees and dismiss the Schreibers' motion to vacate the Charging Lien in the EDNY litigation—effectively abandoning the Schreibers' interest in their settlement proceeds held in the EDNY court's registry.[45] The Contempt Order further imposes a

---

[43] Doc. 5-8, at 40–75.

[44] Doc. 5-8, at 40–75.

[45] Doc. 5-8, at 73–75.

9

penalty of $100 per day for each day the Schreibers' Motion to Vacate the charging lien is not dismissed during the pendency of this appeal.[46]

## VI.    The Two Rivers Parties appeal.

The Two Rivers Parties timely noticed their appeal on October 14, 2025.[47] They also moved for a stay of the Contempt Order, which remains pending in this Court.[48] As noted in that motion, on December 1, 2025, Judge Amon of the EDNY court issued an order abstaining from ruling on Nelkin's appeal of the EDNY's denial of its venue-transfer motion.[49] Judge Amon explained that she did not wish to create further conflict with the bankruptcy court until this Court addresses this appeal.[50]

### Summary of the Argument

This contempt appeal stems from a seven-year fee dispute between Nelkin and its former clients over settlement proceeds held in the EDNY court's registry. Nelkin asserted a charging lien against those proceeds. The Two Rivers Parties defended by moving to vacate the lien on the

---

[46] Doc. 5-8, at 73–75.

[47] Doc. 5-1, at 54.

[48] *See generally* Doc. 3.

[49] Doc. 3, at 22.

[50] Doc. 3, at 22.

ground that Nelkin was discharged for cause—a recognized defense under New York law that, if proven, forfeits the attorney's right to fees altogether.

After Nelkin filed for bankruptcy, the parties agreed to lift the automatic stay so they could resolve the fee dispute in the EDNY. The bankruptcy court memorialized that agreement in an order. Following plan confirmation, the Two Rivers Parties' counsel (Rosenblatt) wrote a letter to the EDNY court advising it that the plan had been confirmed and that the court could proceed to decide "whether any fees are due and owing to the Nelkins." Only after the EDNY denied Nelkin's motion to transfer venue did Nelkin pivot to the bankruptcy court and seek contempt sanctions.

The bankruptcy court held that the charging lien transformed the contingent-fee portion of the settlement into estate property and that the Two Rivers Parties' discharge-for-cause motion was therefore an affirmative claim against the estate—barred by the discharge injunction. This was error for two independent reasons.

First, the Two Rivers Parties did not violate the discharge injunction. The bankruptcy court misapplied New York's charging-lien

11

law. Under settled New York precedent, a former client's assertion of discharge for cause is a *defense* to an attorney's enforcement of a charging lien, not a *claim* against the attorney. A charging lien is a security interest that attaches to client funds only to the extent fees are owed. If the attorney was discharged for cause, no fees are owed and the lien cannot attach. The Two Rivers Parties were not seeking anything *from* Nelkin; they were defending against Nelkin's claim to *their* settlement proceeds. That defense does not make them creditors of the Nelkin estate.

Second, even if the bankruptcy court's interpretation were correct, the Two Rivers Parties' conduct was not objectively unreasonable (the threshold for contempt). They relied on New York caselaw treating discharge for cause as a defense; on the EDNY court's determination that the Schreibers had no affirmative claims against Nelkin and that escrowed funds are generally not estate property; and on the bankruptcy court's own order lifting the stay to let the parties "conclude" the fee dispute. Two federal courts reached opposing conclusions on the same legal question—a textbook "fair ground of doubt."

The contempt order requires the Two Rivers Parties to dismiss their discharge-for-cause motion with prejudice—permanently forfeiting their

12

interest in the EDNY settlement funds—and imposes a $100-per-day penalty until they do. That order is unjust, undeserved, and should be reversed.

## Standard of Review

The bankruptcy court's legal conclusions are reviewed *de novo* while its fact-findings are subject to a clearly erroneous review standard.[51] Under the clearly erroneous standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed."[52]

## Arguments and Authorities

The Court should reverse the bankruptcy court's contempt order. Three elements must be proven for a court to hold a party in contempt: (1) the party violated a definite and specific court order requiring him to perform or refrain from performing a particular act or acts; (2) the party

---

[51] *In re Perry*, 345 F.3d at 309.

[52] *Id.* (quotes omitted).

13

did so with knowledge of the court's order; and (3) no fair ground of doubt exists as to whether the order barred the party's conduct.[53]

Here, the Contempt Order was improper because the first and third elements were not satisfied. As to the first, the Two Rivers Parties did not violate the bankruptcy court's discharge injunction by pursuing a discharge-for-cause defense against the debtor's claim for attorney's fees. As to the third, the Two Rivers Parties had fair grounds to believe that moving to find Nelkin was discharged for cause and forfeited its fee did not violate the discharge injunction. The Two Rivers Parties address each of these points in turn.

---

[53] *Taggart v. Lorenzen*, 587 U.S. 554, 554 (2019); *In re City of Detroit*, 614 B.R. 255, 265 (Bankr. E.D. Mich. 2020).

## I. The Court should reverse the Contempt Order because the Two Rivers Parties did not violate the discharge injunction.

The bankruptcy court erred in finding that the Two Rivers Parties violated the discharge order by pursuing the discharge-for-cause motion in the EDNY court. Boiled down, the analysis here turns on whether the discharge-for-cause motion was a claim or defense. The bankruptcy court held that the charging lien transformed the settlement proceeds into Nelkin's property and that the Two Rivers Parties' discharge-for-cause motion was a claim brought to collect on that property in violation of the discharge order. In the following sections, the Two Rivers Parties will explain that they did not violate the bankruptcy court's discharge order because their discharge-for-cause motion is simply a *defense against Nelkin's claim* for attorney's fees.

### A. A discharge for cause forfeits Nelkin's right to attorney's fees and is a defense to its Charging Lien.

The core error in the bankruptcy court's analysis is that it treated the Two Rivers Parties' discharge-for-cause motion as a claim against Nelkin and was therefore barred by the discharge order. But a discharge for cause is a defense to attorney's fees because a lawyer forfeits their

15

right to attorney's fees if they're discharged for cause.[54] Moreover, a charging lien only attaches to settlement proceeds up to the amount the attorney is owed in fees.[55] So if an attorney is discharged for cause, then they're neither owed fees nor have a valid charging lien.[56] A discharge for cause, then, is a total defense to an attorney's charging-lien action.[57]

New York law supports this. New York's charging-lien statute allows for an attorney's fees lien that attaches to the client's recovery:

> From the commencement of an action ... the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.[58]

---

[54] *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) ("a former attorney's right to a charging lien depends on whether the attorney was terminated with or without cause. If an attorney is discharged for cause, he may not claim a charging lien and is not entitled to legal fees.") (citing *Teichner by Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985)); *Joffe v. King & Spalding LLP*, 337 F. Supp. 3d 366, 369 (S.D.N.Y. 2018), aff'd sub nom. *Joffe v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C.*, 827 Fed. Appx. 35 (2d Cir. 2020).

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] N.Y. Judiciary Law § 475 (McKinney).

Distilled, the statute grants an attorney an equitable interest in their client's cause of action and ensures that the attorney can collect their fee from the fund they have created and obtained on their client's behalf.[59]

A charging lien, however, is not automatically enforceable. The attorney or client must act to enforce it.[60] Section 475 permits an attorney to enforce a charging lien through a motion in the main action or by a separate plenary action.[61] Here, Nelkin's ability to enforce its Charging Lien before the EDNY court derives from the equitable principle that settlement proceeds are ultimately "under the control of the court, and the parties within its jurisdiction, [and the court] will see that no injustice is done to its own officers."[62]

---

[59] *In re Ramirez*, 528 B.R. 580, 595 (Bankr. S.D.N.Y. 2015).

[60] *Sprole v. Sprole*, 151 A.D.3d 1413 (3d Dep't 2017) (recognizing that a charging lien is a creature of statute and provides an attorney compensation for his or her unpaid services, where applicable, by way of an "equitable ownership interest in a client's cause of action" and that the amount of the charging lien may be determined before the outcome of the underlying action—and enforcement of a charging lien is properly pursued by way of motion within the action to which it pertains).

[61] *Miller v. Kassatly*, 216 A.D. 2d 260 [1st Dep't 1995] ("Judiciary Law Section 475 establishes a statutory attorneys' lien, [and] permits enforcement of the lien either by way of motion in the main action or by plenary action."); *Wasserman v. Wasserman*, 119 A.D. 3d 932 [2d Dep't 2014] ("An attorney may enforce a charging lien simply by making a petition to the court in the proceeding where he or she appeared, rather than having to bring a separate plenary action.").

[62] *Rooney v Second Ave R.R. Co.*, 18 NY 368, 369 (1858); *Schneider, Keinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D. 2d 183, 187–88 (1st Dep't 2002).

But the court doesn't simply rubberstamp requests for a charging lien. The decision to attach a charging lien to the disputed settlement proceeds is within the EDNY court's discretion.[63] And an attorney who's discharged for cause is not entitled to fees or a charging lien.[64] In fact, an attorney who has been discharged "maintains ... her right to enforce the statutory lien," only so long as the "representation terminates upon mutual consent, and there has been no misconduct, no discharge for just cause, and no unjustified abandonment by the attorney."[65] As Judge Orenstein observed, "interference with the Schreibers' right to settle warranted discharging the Nelkins for cause."[66] So under New York law, whether a former attorney can receive a charging lien depends on whether the attorney was terminated with or without cause. If an

---

[63] *Joffe v. King & Spalding LLP*, 337 F. Supp. 3d 366, 369 (S.D.N.Y. 2018), aff'd sub nom. *Joffe v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C.*, 827 Fed. Appx. 35 (2d Cir. 2020).

[64] *See Callaghan v. Callaghan,* 48 A.D.3d 500, 501 (2d Dep't 2008).

[65] *CPMI, Inc. v. Kolaj*, 137 A.D.3d 953, 955–56 (2d Dep't 2016) (citation omitted); *Sellick v. Consol. Edison Co. of New York, Inc.*, No. 15-CV-9082 (RJS), 2017 WL 1133443, at *3 (S.D.N.Y. Mar. 23, 2017).

[66] Doc. 5-6, at 39; *see also Dagny Mgmt. Corp. v. Oppenheim & Meltzer,* 199 A.D.2d 711, 713 (3rd Dep't 1993) .

attorney is discharged for cause, then the attorney is not entitled to legal fees and may not claim a charging lien.[67]

Put another way, a discharge for cause is a defense to a charging lien. After all, the right to assert a charging lien under § 475 is relinquished only when the attorney is terminated by the client for cause or withdraws without proper justification.[68] New York's highest court has long considered a discharge for cause as a defense against an attorney's enforcement of a charging lien:

> [W]hile the [charging lien] statute gives the lien, the plaintiff must show that he comes within the statute by establishing the facts alleged in his complaint; and ***the action is open to any defense*** tending to show that no lien ever existed, or that, if it once existed, it was discharged with the consent of the plaintiff, or ***was waived or forfeited by his misconduct*** or neglect.[69]

---

[67] *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) (citing *Teichner by Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985)); *El Nabi v. City of New York*, 779 F. Supp. 3d 428, 436 (S.D.N.Y. 2025); *People v. Keeffe,* 50 N.Y.2d 149,  156 (1980); *Dagny Mgmt. Corp.,* 199 A.D.2d at 712 (holding "'[w]here the discharge is for cause, [an] attorney has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement'") (quoting *Campagnola,* 76 N.Y.2d at 44; *Williams v. Hertz Corp.,* 75 A.D.2d 766, 767 (1st Dep't 1980) (holding that "an attorney who is discharged for cause or misconduct has no right to the payment of fees").

[68] *McDermott v. Great Am. All. Ins. Co.*, No. CivA5:02CV0607, 2006 WL 2038452, at *3 (N.D.N.Y. July 18, 2006) (citing *Cruz v. Olympic Trails Bus Co.*, No. 99 CIV. 10861, 2002 WL 1835440, at *4 (S.D.N.Y. Aug. 8, 2002).

[69] *Fischer-Hansen v. Brooklyn Heights RR*, 173 N.Y. 492, 502 (1903) (emphasis added); *see, e.g., Bailey v. Murphy*, 136 N.Y. 50, 51 (1892) (noting that a client has the

19

That pronouncement still holds true today under New York's interpretation of the latest version of the charging-lien law.[70]

Here, after Nelkin asserted a charging lien against the *Friedman* settlement proceeds, the Two Rivers Parties moved to vacate the charging lien because Nelkin was discharged for cause.[71] Applying New York law, in doing so the Two Rivers Parties were asserting a defense to Nelkin's claim for fees—not the other way around. Nothing about the bankruptcy court's discharge order enjoined the Two Rivers Parties from asserting *defenses* against Nelkin. The bankruptcy court thus erred when it held that the Two Rivers Parties violated the discharge injunction by pursuing their discharge-for-cause motion. That error should be reversed.

## B. The Charging Lien did not transform the Two Rivers Parties into creditors.

The bankruptcy court erred in finding that "a claim for forfeiture of legal fees based on an attorney's discharge for cause due to ethical

---

same right to defend against such an asserted liability as belongs to him when any other claim is alleged, the existence or amount of which he disputes).

[70] *Schneider*, 302 A.D.2d at 188 (a charging lien action is open to any defense…).

[71] Doc. 5-4, at 88–89.

violations is treated as a claim for disgorgement of legal fees under New York law."[72] The Two Rivers Parties are not seeking money *from* Nelkin, so they're not Nelkin's creditors.

Under the Bankruptcy Code, a creditor is an "entity which has a claim against the debtor that arose at or before the order for relief concerning the debtor."[73] But an entity with no claim is not a creditor.[74] Nothing in the record suggests that the Two Rivers Parties sought to recover anything from Nelkin. Rather, they disputed *Nelkin's claim* that it was entitled to a percentage of the *Friedman* settlement funds in the EDNY's registry as a contingency fee. In characterizing the fee dispute as a cause of action against Nelkin, the bankruptcy court departed from New York precedent governing the enforcement of charging liens.

A charging lien is a specialized legal mechanism by which attorneys can enforce a lien on the funds they create for their client. A charging lien is considered the equity of redemption in the property, not the property itself, which is obtained through the attorney's services and is subject to

---

[72] Doc. 5-8, at 51.

[73] 11 U.S.C. § 101(9).

[74] *See In re Kreisler Group, Inc.*, 648 F.2d 86, 87–88 (2d Cir.1981).

a charging lien.[75] New York courts only apply the right to enforce a charging lien to the specific funds subject to the lien, not to Nelkin's entitlement to a legal fee in general.[76] By comparison, unlike a charging lien, an application in *quantum meruit* for legal fees is "a cause of action that 'can be exercised by the attorney against all of the former client's assets'—not merely against the recovery obtained from a defendant."[77]

The bankruptcy court's reliance on *Access Point Med., LLC v. Mandell*,[78] and *Lumen Ltd. v. Quazi*,[79] does not support its legal conclusion that the defense of discharge for cause is considered a disgorgement claim. Both courts explained that a plaintiff's demand for the *return* of attorneys' fees they had already paid their attorneys is, in

[75] *Robinson v. Rogers*, 237 N.Y. 467, 473–74 (1924).

[76] Like a mechanic's lien, it makes no difference how the mechanic is compensated for their work. If a customer cannot pay for the mechanic's services, the law gives the mechanic the right to retain the vehicle upon which they provided services.

[77] *Ocean World Lines, Inc. v. Atlant (USA) Inc.,* 2008 WL 1776415, *2 (S.D.N.Y. Apr.17, 2008) (quoting *Schneider,* 302 A.D.2d at 188). An attorney can lose its right to enforce a charging lien and still maintain a right to seek compensation from its client in a plenary action. *In re Harley & Browne*, 957 F. Supp. 44, 49 (S.D.N.Y. 1997) ("[I]f [an] attorney fails to enforce the lien within a reasonable time, the lien will be deemed waived and the attorney relegated to a plenary action against the client for any fees"). Indeed, an attorney's loss of the right to enforce a charging lien does not necessarily mean the attorney has forfeited their right to a legal fee, unless the attorney was discharged for cause.

[78] 106 A.D.3d 40, 44 (1st Dept. 2013)

[79] No. 613812-21 (Sup. Ct. Nassau County Aug. 28, 2023).

essence, a claim for monetary damages, and the nature of the claim cannot be distorted by the term "disgorgement." Neither case addressed charging liens or funds held in the court's registry.

The bankruptcy court also relied too heavily on *State Auto v. Trachtenberg*.[80] That case also doesn't address the enforcement of charging liens or defenses against them. Instead, the court in *State Auto* explained, "a cause of action for forfeiture of legal fees based on an attorney's discharge for cause due to ethical violations *may be maintained* independent of a cause of action alleging legal malpractice or breach of fiduciary duty."[81] In other words, a former client can bring a discharge for cause as a cause of action, just as an attorney can file a separate plenary action for fees owed or seek to enforce a lien on the proceeds generated by their work. But *State Auto* doesn't hold that using the defense of discharge for cause in a charging-lien proceeding is regarded as a cause of action against a property right.[82]

---

[80] No. 710980/2023, 2024 (Sup. Ct. Queens County May 6, 2024).

[81] *Id*. at 10 (emphasis added).

[82] *Schneider*, 302 A.D.2d at 188 (a charging lien action is open to any defense tending to show that no lien ever existed or was forfeited by his misconduct or neglect).

23

The EDNY court's analysis of whether Nelkin was discharged for cause was needed to determine the amount of the charging lien on the settlement funds—if any. After all, the lien attaches to settlement funds only for the amount of attorney's fees owed. So if *no* fees are owed—because the attorney was discharged for cause—then the charging lien cannot attach to the settlement. This is confirmed by the New York appellate court's analysis in *Hertz*, where it examined discharge for cause as a defense to the creation of a lien:

> We believe the Appellate Division properly dismissed the claim to assert a lien against the judgment debtor Hertz, but solely upon the ground that the claim made against Hertz is premature because the amount of the attorney's lien, if any, has not yet been established in this summary proceeding brought pursuant to section 475 of the Judiciary Law (1 Carmody-Wait 2d, N.Y.Prac., § 3:150, p. 477). Any defense to the enforcement of a lien against Hertz may be asserted in a plenary action after the amount of the lien has been fixed.[83]

The EDNY court hasn't yet determined the amount of Nelkin's fee if any.[84]

---

[83] *Williams v. Hertz Corp.*, 59 N.Y.2d 893, 895 (1983); *Schneider*, 302 A.D.2d at 190 (Plaintiff's rights in the lien, while vested, were inchoate because the amount of the fee had still to be determined).

[84] *Crowley v. Wolf*, 281 N.Y. 59, 64–65 (1939); *Marschke v. Cross*, 82 A.D.2d 944 (1981).

24

Though the EDNY court needs to determine whether Nelkin can *enforce* its charging lien on the settlement funds in its registry, or whether it forfeited its right to fees and to collect on the settlement proceeds because it was discharged for cause. Nothing about the bankruptcy court's discharge injunction should have interfered with this process.

Even so, Nelkin's contempt motion tried to turn the settlement funds into estate property by relying on *LMWT Realty Corp. v. Davis Agency*.[85] Citing that case, Nelkin misled the bankruptcy court into concluding that "a charging lien was more than a "priority of payment," and in fact conveys property ownership of the portion of the settlement proceeds assigned to the attorney.[86] This misreads *LMWT* and ignores the precedent that contradicts this view and addresses how defenses to a charging lien are adjudicated in New York.

Even so, the bankruptcy court used Nelkin's reading of *LMWT* to conclude that Nelkin's charging lien was a vested property right in the

---

[85] 85 N.Y.2d 462, 462 (1995).

[86] Doc. 5-8, at 48.

settlement proceeds and thus bankruptcy-estate property.[87] This was an overreach. The *LMWT* case was simply a dispute over the *priority* between an attorney's charging lien and an unrelated tax lien on the client's property. There, the attorneys secured a settlement for an insured property owner's fire-loss claim against the insurer.[88] A question arose about whether the attorneys' charging lien on the settlement proceeds should take priority over a preexisting City of New York lien for unpaid property taxes.[89] The tax lien didn't stem from the insured–insurer relationship; nor was it related to the fire-loss settlement that the attorneys brokered.[90] The court agreed with the insured's counsel, noting that *equitable considerations* required the attorneys to be paid first because, but for their efforts, the fund subject to the City's taxing lien wouldn't have existed at all.[91]

That said, the court acknowledged the City's argument that "a claim may ... supersede an attorney's lien if the claim is both prior in time

---

[87] Doc. 5-8, at 48–49.

[88] 85 N.Y.2d 465.

[89] *Id.* at 465–66.

[90] *Id.* at 466.

[91] *Id.* at 468.

and a charge against the specific fund upon which the attorney's lien attaches, not merely general indebtedness asserted against the client."[92] But the "equitable factor" was the sticking point of *LMWT*. Thus, the charging lien was more than a security interest compared with a preexisting, unrelated lien on the same insurance proceeds the attorney was retained to recover.

*LMWT* did not address an attorney's discharge "for cause" or how such a discharge affects the validity and enforceability of a charging lien. It also didn't answer whether a discharge "for cause" serves as a defense against a charging lien. *LMWT* doesn't even mention "for cause" or "discharge."

What the Court can glean from *LMWT* is that New York law focuses on equitable considerations in deciding whether to enforce a charging lien.[93] So the EDNY court should be allowed to consider Nelkin's discharge for cause in analyzing the merits of Nelkin's charging lien.

---

[92] *Id.*

[93] *J.K.C. v. T.W.C.*, 966 N.Y.S.2d 812, 820 (Sup. Ct. Monroe County 2013).

## II. The Court should reverse the Contempt Order because the Two Rivers Parties had fair grounds to believe they complied with the discharge injunction.

That the Two Rivers Parties did not violate the discharge injunction alone means that the bankruptcy court erred in holding them in contempt. Beyond that, the bankruptcy court also erred because the Two Rivers Parties had fair grounds to believe they were complying with the discharge injunction when pursuing their discharge-for-cause motion.

To decide whether a party should be held in contempt for violating a discharge injunction, courts use an objective standard, where contempt is only justified when there's no "fair ground of doubt" that the creditor's conduct might be lawful under the discharge order.[94] That is, no objectively reasonable basis existed to conclude that the party's conduct might be lawful.[95]

So under the fair-ground-of-doubt standard, "civil contempt ... may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the

---

[94] *In re McKinney*, No. 21-50046, 2022 WL 1632156, at *2 (Bankr. N.D. Tex. Apr. 28, 2022); *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (a bankruptcy court should not impose civil contempt sanctions "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.").

[95] *Taggart*, 587 U.S. at 554.

28

statutes that govern its scope."[96] The fair-ground-of-doubt standard "is generally an objective one," but the subjective intent of a party is still relevant.[97] For example, "civil contempt sanctions may be warranted when a party acts in bad faith," and "[o]n the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction."[98] And a party "must be able to discern from the language of a court's order the actions necessary to comply with the court's directive."[99]

Evaluating the Two Rivers Parties' actions under the fair-ground-of-doubt standard, the bankruptcy court needed to consider whether the Two Rivers Parties "violate[d] a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope."[100] The bankruptcy court found that their conduct was objectively unreasonable because (1) they assumed that the proceeds of their settlement against *Friedman* was their property; (2) The Two

---

[96] *Id.* at 562.

[97] *Id.*

[98] *Id.*

[99] *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 268 (4th Cir. 2019).

[100] *Id.*

Rivers Parties (and their lawyer) were objectively unreasonable for relying on the EDNY court's interpretation of what's property of Nelkin's bankruptcy estate; and (3) The Two Rivers Parties (and their lawyer) were objectively unreasonable for concluding that the bankruptcy court did not discharge the charging-lien dispute and that they were not enjoined from continuing the EDNY case after the bankruptcy court ordered that the parties "conclude" the charging-lien fee dispute.

### A. The Two Rivers Parties were not unreasonable for believing they were bringing a defense and not a claim against Nelkin's property.

It shouldn't go lost that the bankruptcy court held the Two Rivers Parties in contempt for merely advising the EDNY court that the bankruptcy court had confirmed a plan and could proceed to rule on the pending motions. To the bankruptcy court this step (a letter) continued claims against Nelkin's property that was discharged by the discharge order. But as this brief explained earlier, New York caselaw permitted the Two Rivers Parties to assert "discharge for cause" as a defense to Nelkin's enforcement of a charging lien.[101] So the Two Rivers Parties were not bringing a discharged claim against the Nelkin estate in

---

[101] *Fischer-Hansen,* 173 N.Y. at 502.

30

violation of the discharge order. They were asserting a defense to Nelkin's claim for fees.

Moreover, even if this Court disagrees (and it shouldn't), the Two Rivers Parties' conduct was not so unreasonable that it amounted to contempt. There's a difference between being wrong and being unreasonable.[102] Especially given that discharge orders are inherently vague. In the context of a bankruptcy-discharge order, in fact, the Supreme Court has acknowledged that "because discharge orders are written in general terms and operate against a complex statutory backdrop, there will often be at least some doubt as to the scope of such orders."[103] Given the confusion surrounding discharge orders and New York caselaw supporting that discharge for cause is a defense, it was objectively reasonable for the Two Rivers Parties to believe their conduct did not violate the discharge injunction.

The Two Rivers Parties were reasonable for believing they were defending against Nelkin's claims for attorney's fees out of the *Friedman*

---

[102] *Amerinor, LLC v. Sanara Wellness LLC*, No. A-20-CV-01022-JRN, 2021 WL 2679044, at *1 (W.D. Tex. Mar. 31, 2021) (noting that a counsel's choice to stand behind an argument the court found unconvincing is not inherently unreasonable).

[103] *Id.* at 564.

settlement. Nothing in the record justifies the bankruptcy court's conclusion that the Two Rivers Parties acted unreasonably. To hold otherwise would be to hold that it was unreasonable for the Two Rivers Parties to believe that their settlement proceeds belonged to them—as opposed to their lawyers.

### B. The Two Rivers Parties were not unreasonable for relying on the EDNY court's order that the *Friedman* settlement was not Nelkin's property.

The bankruptcy court also erred in holding that the Two Rivers Parties were objectively unreasonable in relying on the EDNY court's interpretation of what constituted property of the Nelkin's bankruptcy estate. As an initial matter, the bankruptcy court erred in finding that the Two Rivers Parties obtained an order from the EDNY court on June 8, 2025. The June 8, 2025, Order is the EDNY court's denial of Nelkin's venue-transfer motion. *Nelkin was the movant*—not the Two Rivers Parties. And the parties completed briefing on that motion in September 2024. Nothing in the record shows they "obtained" any order from the EDNY court after the discharge injunction was in place.

More fundamentally, the bankruptcy court erred when it criticized the Two Rivers Parties for relying on the EDNY court's observation that

32

escrowed assets (like the settlement funds in the registry) are not bankruptcy-estate property.[104] After all, Judge Pollack declined to expressly rule whether the money in the EDNY's registry was part of Nelkin's bankruptcy estate but explained why it likely wasn't:

> The Court notes that the settlement funds and assets are currently being held on deposit with this Court and in escrow by Frankfurt Kurnit, Klein & Selz. While this Court is not ruling on the status of the escrow assets at this time, "'[m]ost courts have held that assets in escrow are not property of the estate. Estate property is confined to the rights conferred upon the debtor by the escrow agreement, not property rights in the assets escrowed.'"[105]

It was not objectively unreasonable for the Two Rivers Parties to rely on another federal court's opinion. On the contrary, the entire stare decisis system depends on litigants doing so. Of course, reasonable minds can differ on the weight to attribute to another court's opinion. But our case-precedent system cannot afford to find contempt simply because another court disagrees.

---

[104] Doc. 5-8, at 56–58.

[105] *Schreiber,* 2025 WL 1616659, *15 (Appendix 1) (cites omitted).

33

**C. The Two Rivers Parties were not objectively unreasonable for concluding that the bankruptcy court did not discharge the charging-lien dispute.**

The Two Rivers Parties had legal and factual reasons to conclude that the charging-lien dispute was outside the bankruptcy court's jurisdiction. The Two Rivers Parties repeatedly informed the bankruptcy court and the EDNY court that they weren't asserting claims against Nelkin and that they were not Nelkin's creditors. Rather, they only sought to protect their interests in the *Friedman* settlement proceeds. The Two Rivers Parties did not file a proof of claim in the bankruptcy court and did not submit to the bankruptcy court's equitable authority to disallow their interest in the settlement proceeds.[106] And even the bankruptcy court acknowledged that the Two Rivers Parties still had an interest in part of the *Friedman* settlement proceeds:

> To be clear, this Court's finding that the Fee Recovery Litigation has been discharged and that Nelkin has a vested interest in its Contingency Fee does not necessarily mean that 100% of the Settlement Proceeds is Nelkin's property. Instead, Nelkin has a vested property interest only in the Contingency Fee, whatever its value may be. Notably, the value of the Contingency Fee has not yet been determined by any court and remains in dispute.[107]

---

[106] *In re Manville Forest Prods. Corp.*, 896 F.2d at 138.

[107] Doc. 5-8, at 54.

34

Against this backdrop, it wasn't unreasonable for the Two Rivers Parties to believe that they were defending their property from the Nelkin's claim. Not that they were making a claim against Nelkin's property.

It *was* reasonable for them to believe that they had the bankruptcy court's blessing to continue litigating the charging-lien fee dispute. After all, Nelkin agreed to lift the bankruptcy stay and continue litigating the dispute—and the bankruptcy court memorialized that agreement in an order. When Nelkin sought to repudiate the agreement, the bankruptcy court enforced it and lifted the stay until the parties "concluded" the EDNY charging-lien fee dispute. This undermines the bankruptcy court's finding that the Two Rivers Parties were objectively unreasonable for seeking to proceed with the discharge-for-cause motion.

Even the EDNY court interpreted the bankruptcy court's order as permitting the EDNY court to resolve the fee dispute:

> Common sense suggests that judicial economy would not be served by lifting the stay as to the proceedings in this Court, just to have litigation over whether the case should then be transferred to the Texas Bankruptcy Court. This is especially true now that the Bankruptcy Court has confirmed a Plan without waiting for resolution of the fee entitlement dispute

35

and is ostensibly in the final stages of the bankruptcy proceeding.[108]

Against this backdrop, the Two Rivers Parties objectively had reason to believe they could proceed to pursue their discharge-for-cause motion.

They especially had reason to believe that since EDNY court—which specializes in New York law—held that the discharge for cause was a defense and not an affirmative claim against Nelkin's charging lien:

> The Schreibers have no affirmative claims against the Firm in either the Bankruptcy Court or this Court. Thus, this case involves the Debtor asserting a claim against a non-party to the lead bankruptcy case. The Schreibers' defense that they discharged the Firm for cause is based in a right derived from state law that they are entitled to present before an Article III judge. [*In re Manville Forest Prods. Corp.*, 896 F.2d at 1389]. (noting that where a debtor brought a breach of contract claim against a defendant who had not filed a proof of claim and had "no other connection with the bankruptcy case," *Marathon* held that "state-created private rights, such as the debtor's breach of contract claim, must be adjudicated by an Article III judge").[109]

Simply put, the Two Rivers Parties were objectively reasonable in concluding that the charging-lien litigation wasn't discharged, especially when two federal courts disagree on the parties' positions and

---

[108] *Schreiber*, 2025 WL 1616659, *12 (Appendix 1).

[109] *Id.* at *20 (Appendix 1); see also (Appendix 5).

interpretations of New York law. It was error for the bankruptcy court to conclude otherwise.

*    *    *

A contempt finding is among the most serious sanctions a court can impose. Yet here it rests on a misapplication of New York charging-lien law that transforms a recognized defense into a prohibited claim. Worse still, the bankruptcy court conditioned the purge of that contempt on an extraordinary remedy: the Two Rivers Parties must dismiss with prejudice the very motion that protects their interest in over a million dollars of settlement funds—or face a compounding $100-per-day penalty. The practical effect is to coerce the Two Rivers Parties into forfeiting their rights under threat of indefinite financial punishment, all while this appeal remains pending. This Court should reverse.

## Conclusion

For these reasons, the Two Rivers Parties respectfully ask that this Court reverse and vacate the bankruptcy court's contempt order. The Two Rivers Parties further ask that the Court vacate the holding that they must dismiss their defense and interest in the EDNY litigation.

Respectfully submitted,

/s/ Avi Moshenberg
Avi Moshenberg
avi.moshenberg@lmbusinesslaw.com
Nick Lawson
nick.lawson@lmbusinesslaw.com
Lawson & Moshenberg PLLC
2301 Commerce Street, Suite 200
Houston, TX 77002
Telephone: (713) 449-9644

**Attorneys for Appellants**

## Certificate of Service

I certify that on February 9, 2026, a copy of this document was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic-filing system to all counsel of record who've appeared.

/s/ Avi Moshenberg
Avi Moshenberg

38

## Certificate of Compliance

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h) and any applicable local rules, I certify that:

1.  This brief complies with the type-volume limitation of Rule 8015(a)(7) because it contains **6,398** words, excluding the parts of the brief exempted by Rule 8015(g).

2.  This brief complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(6) because it has been prepared in a proportionally spaced typeface using **Microsoft Word** in **14-point Century Schoolbook** font.

3.  In accordance with Rule 8006(f)(3), I have served or made diligent efforts to serve all parties entitled to notice of this filing by **ECF/CM** on **February 9, 2026**.

*/s/ Avi Moshenberg*
Avi Moshenberg