**No. 25-cv-5009**

---

In the United States District Court
For the Southern District of Texas

---

TWO RIVERS COFFEE, LLC AND STEVEN SCHREIBER,

*APPELLANTS*

v.

NELKIN & NELKIN P.C.

*DEBTOR–APPELLEE*

---

On Appeal from the Bankruptcy Court for the United States District
Court for the Southern District of Texas, No. 23-34054

---

**APPELLANTS' REPLY BRIEF**

---

AVI MOSHENBERG
Texas Bar No. 24083532
avi.moshenberg@lmbusinesslaw.com
LAWSON & MOSHENBERG PLLC
2301 Commerce Street, Suite 200
Houston, Texas 77002
(713) 449-9644
*Counsel for Appellants*

1

## TABLE OF CONTENTS

*Page*

Table of Contents.................................................................................2

Table of Authorities ............................................................................3

Arguments & Authorities....................................................................5

1.    The court has appellate jurisdiction...............................................6

2.    The charging lien and fee claim are not estate property.................7

3.    Discharge for cause is a defense that does not require a proof
      of claim in bankruptcy. ..............................................................12

4.    The Two River Parties had fair grounds to believe they
      complied with the discharge injunction. ......................................14

5.    Nelkin's remaining arguments are meritless distractions............15

Conclusion........................................................................................17

Certificate of Service .........................................................................19

Certificate of Compliance ..................................................................19

## TABLE OF AUTHORITIES

*Page(s)*

**UNITED STATES COURT OF APPEALS CASES**

In re Mandall & Wright,
176 F. App'x 540, 541 (5th Cir. 2006) ................................................. 10

**UNITED STATES DISTRICT COURT CASES**

*Cronin v. Chabrowe,*
793 F.Supp.3d 458 (2025) ................................................................. 13

*Empire United Lines Co. v. Feldman,*
No. 21-CV-4274-JRC, 2025 WL 813606 (E.D.N.Y. Mar. 12, 2025) ..... 10

*In re River Ctr. Holdings, LLC,*
394 B.R. 704, 719 (Bankr. S.D.N.Y. 2008) .......................................... 10

*Joffe v. King & Spalding LLP,*
337 F. Supp. 366 (S.D.N.Y. 2018) ....................................................... 11

*Schreiber v. Friedman,*
No. 15 CV 6861, 2025 WL 1616659 (E.D.N.Y. June 8, 2025)
(Appendix 1) ................................................................................. 15

**STATE COURT CASES**

*Chadbourne & Parke, LLP v. AB Recur Finans,*
18 A.D.3d 222 (2005) ........................................................................ 7

*In re City of New York,*
5 N.Y.2d 300 (1959) .......................................................................... 9

*LMWT Realty Corp. v. Davis Agency, Inc.,*
85 N.Y.2d 462, 467–68 (1995) ............................................................ 8

*Piccarreto v. Mura,*
970 N.Y.S.2d 408 (Sup. Ct. 2013) ...................................................... 12

*Roe v. Roe*,
  117 A.D.3d 1217 (2014)........................................................................7

*Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*,
  302 A.D.2d 183 (2002)..........................................................................7

*Teichner by Teichner v. W & J Holsteins, Inc.*,
  64 N.Y.2d 977 (1985)..........................................................................10

*Tunick v. Shaw*,
  45 A.D.3d 145 (2007)............................................................................9

**RULES**

Fed. R. Bankr. P. 8002 .........................................................................5, 6

N.Y. Judiciary Law § 475 ........................................................................7

## ARGUMENTS & AUTHORITIES

The Two Rivers Parties'[1] opening brief recounts the seven-year fee dispute between them and their former attorneys at Nelkin.[2] Nelkin's response does not deny that it committed malpractice and other misconduct that ordinarily results in fee forfeiture. Or that the Two Rivers Parties assert a state-law (and absolute) defense against any attempts to collect the forfeited fee. But still, Nelkin contends it can collect forfeited fees because their bankruptcy filings somehow turned invalid fee claims into unchallengeable ownership rights over the Two Rivers Parties' settlement funds.

Unfortunately, the bankruptcy court adopted Nelkin's view of the law. And based on that misunderstanding, the Two Rivers Parties were held in contempt because they attempted to assert their defense to Nelkin's fee claim in the court where that claim is pending.

The opening brief explained why the contempt order was reversible error. Nelkin's response attempts to defend the order by: (1) challenging this Court's jurisdiction; (2) mischaracterizing the charging lien as an

---

[1] The "Two Rivers Parties" are Appellants Two Rivers Coffee, LLC and Steven Schreiber.

[2] "Nelkin" is Appellee Nelkin & Nelkin P.C.

unchallengeable property right; (3) contending that the Two Rivers Parties' state-law forfeiture defense counts as an affirmative claim under bankruptcy law; and (4) circularly treating the bankruptcy court's entry of the contempt as independent proof that the Two Rivers Parties had no fair reason to believe their state-law defense is also a defense in the context of bankruptcy. The bankruptcy court's contempt order should be reversed because each of those arguments fails.

### 1.    The court has appellate jurisdiction.

Nelkin's statement of jurisdiction recognizes that the bankruptcy court issued a "final, appealable order" when it held the Two Rivers Parties in contempt on October 1, 2025.[3] And Nelkin doesn't dispute that the Two Rivers Parties timely noticed their appeal from that order.[4] Still, Nelkin claims this appeal is untimely because the bankruptcy court abated the contempt order for a short time after its entry and Nelkin did not file a second notice of appeal after the abatement was lifted.[5]

---

[3] *See* Appellee's Br. 5.
[4] *See* Doc. 5-1, pp. 54–57 (notice of appeal filed on October 14, 2025); *see also* Fed. R. Bankr. P. 8002(a) (setting the 14-day deadline for notices of appeal).
[5] *See* Appellee's Br. 5.

Nelkin cites no authority to support its contention that the Two Rivers Parties had to file a second notice of appeal after they timely appealed the bankruptcy court's appealable contempt order. That is because no such authority exists.[6] At most, Nelkin's argument would only suggest that the abatement rendered the Two Rivers Parties' initial notice of appeal premature, in which case the notice would still be considered timely under Rule 8002(a)(2).[7] Accordingly, the Court should reject Nelkin's meritless jurisdictional objection.

**2.    The charging lien and fee claim are not estate property.**

Nelkin is right to recognize "New York law governs the nature of Nelkin's interest" in the contingency fee, the charging lien, and the settlement proceeds.[8] But apart from that basic legal premise, Nelkin fundamentally misunderstands the substance of the governing law.

---

[6] For certain listed post-judgment motions, an amended notice is needed to challenge the ruling on that motion. *See* Fed. R. Bankr. P. 8002(b)(3). The Two Rivers Parties did not file a motion subject to that rule, so it doesn't apply here.

[7] *See* Fed. R. Bankr. P. 8002(a)(2) ("A notice of appeal filed after the bankruptcy court announces a decision or order—but before entry of the judgment, order, or decree—is treated as filed on the date of and after the entry.").

[8] Appellee's Br. 10.

Under New York law, a charging lien is a statutory remedy—codified in Judiciary Law § 475—that grants attorneys "a security interest in the favorable result of [the] litigation."[9] By invoking that remedy, Nelkin prevented the disbursement of the settlement proceeds held in the EDNY registry until the Two Rivers Parties' obligation to pay, if any, is satisfied. But the charging lien ***did not*** automatically establish Nelkin's vested ownership over either the contingency fee or the registry funds. Rather, as the Two Rivers Parties explained in their opening brief, enforcement of the charging lien includes safeguards that subject Nelkin's claim to forfeiture and defensive challenges to reasonableness.[10] Until Nelkin overcomes those challenges and proves its right to the registry funds, Nelkin does not have any ownership over the registry funds or its claimed contingency fee.

---

[9] *Chadbourne & Parke, LLP v. AB Recur Finans*, 18 A.D.3d 222, 223 (2005); *Roe v. Roe*, 117 A.D.3d 1217, 1218, (2014).

[10] *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 188 (2002) (explaining that an attorney seeking to enforce a charging lien "must show that he comes within the statute by establishing the facts alleged in his complaint, and the action is open to any defense tending to show that no lien ever existed, or that if it once existed it was discharged with the consent of the plaintiff, or was waived or forfeited by his misconduct or neglect" (cleaned up)); *see also* Appellants' Br. 15–20.

To argue otherwise, Nelkin urges a maximalist interpretation of a statement in *LMWT Realty* that says contingency fee agreements create "a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client."[11] Nelkin reads that statement far too broadly. In *LMWT*, the question was whether an attorney's lien had priority over that of another lienholder,[12] and the court did not consider how the analysis would be different if the attorney had been discharged for cause. That question is answered by other state and federal authority discussed in the Schreiber's opening brief, which shows that charging liens most assuredly ***can*** be disturbed by clients in cases of attorney misconduct.[13]

---

[11] *See* Appellee's Br. 10 (quoting *LMWT Realty Corp. v. Davis Agency, Inc.*, 85 N.Y.2d 462, 467–68 (1995)).

[12] *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d at 465 (holding that "the attorneys' charging lien should be given priority").

[13] *See* Appellants' Br. 18–19 (collecting cases).

Nor does Nelkin's position find support in its other authority. In *City of New York*[14] and *River Center*[15], the courts considered whether charging liens gave attorneys superior rights to other non-client parties; in *Empire*, the analysis turned on the fact that the attorney *had not* been discharged;[16] in *Tunick* the Court investigated and rejected objections to the "quality and efficacy" of the legal services rendered;[17] and in *In re Mandall & Wright*, the Fifth Circuit said nothing at all about New York law, charging liens, or much of anything else.[18] None of those cases even attempted to address a situation involving an attorney's misconduct or discharge for cause. So none of them are relevant to the question here.

---

[14] *In re City of New York*, 5 N.Y.2d 300, 304 (1959) (noting that the parties were "contesting the relative priority in payment of the attorney's fee for services rendered and the Government's lien for unpaid withholding taxes").

[15] *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 719 (Bankr. S.D.N.Y. 2008) (deciding whether to rely on equitable principles to give other claimants toa judgment priority over a charging lien).

[16] *See Empire United Lines Co. v. Feldman*, No. 21-CV-4274-JRC, 2025 WL 813606, at *3 (E.D.N.Y. Mar. 12, 2025) (noting the attorney was "never discharged").

[17] *See Tunick v. Shaw*, 45 A.D.3d 145, 149 (2007).

[18] *In re Mandall & Wright*, 176 F. App'x 540, 541 (5th Cir. 2006) (two-paragraph unpublished affirmation with virtually no factual discussion or legal citations).

Instead, this case is governed by the long-established principle recognized in cases like the Court of Appeals' decision in *Teichner*, which held that attorneys who are discharged for cause "[have] no right to compensation or to a retaining lien."[19] That principle has been consistently applied by both New York and federal courts,[20] and Nelkin offers no authority for the Court to do otherwise here. And even without the caselaw, Nelkin's position would fail as a matter of basic fairness. If charging liens established unchallengeable property rights that persist even after attorneys are discharged for cause, clients will have no safeguards against attorneys who commit professional misconduct and exploit charging liens to guarantee their own payment. Moreover, if the bankruptcy injunction was sufficient to extinguish a client's defense of an attorney's charging lien (regardless of the amount of such claimed lien), then clients would be left without remedies against overreaching and unethical attorneys.

---

[19] *Teichner by Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985) ("A client has an absolute right to discharge an attorney at any time. If the discharge is with cause, the attorney has no right to compensation or to a retaining lien.").

[20] *See, e.g., Joffe v. King & Spalding LLP*, 337 F. Supp. 366, 369 (S.D.N.Y. 2018); *Teichner*, 64 N.Y.2d at 979 (collecting cases).

Accordingly, the Court should reject Nelkin's attempt to treat their invalid charging lien as an unchallengeable vested property right.

### 3. Discharge for cause is a defense that does not require a proof of claim in bankruptcy.

Nelkin's next argument contends that the Two Rivers Parties' fee forfeiture defense is not really a defense at all, but a "rhetorical move" that attempts to describe a claim as a defense. That argument fails because the Two Rivers Parties' invocation of governing New York law is not mere rhetoric; it is a correct statement of the law that Nelkin admits governs its charging lien and fee claim.[21]

To argue otherwise, Nelkin compares fee forfeiture to an action for disgorgement, which supposedly would constitute "an equitable remedy" that falls within the Bankruptcy Code's definition of "claim."[22] But Nelkin's only authority on that point is a pair of cases that allowed clients to pursue claims for disgorgement seeking *affirmative payments* for

---

[21] Appellants' Br. 15–20 (explaining why discharge for cause is a defense under New York law); Appellee's Br. 10 (conceding that "New York law governs the nature of Nelkin's interest" in the charging lien and fee claim).

[22] Appellee's Br. 11.

12

fees they had already paid to their attorneys.[23] Under the Bankruptcy Code section Nelkin relies on, the difference is critical because a claim is defined in terms of the creditor's "right to payment," which doesn't apply to a party that's trying to **resist** a debtor's attempt to collect.

And that's exactly what's happening here—the Two Rivers Parties are not pursuing a right to payment from Nelkin, they're trying to resist Nelkin's fee claim. That's not a claim for disgorgement under applicable state law.[24] And as already discussed, it's not a "claim" under the Bankruptcy Code's definition. As a result, Nelkin's citations to cases of creditors who lost the right to seek affirmative payments from debtors by failing to file timely proofs of claim are irrelevant because the Two Rivers Parties do not seek to recover any affirmative payment.[25]

---

[23] *See* Appellee's Br. 12 (acknowledging that *Star Auto* and *Access Point Medical* "involved fees already paid").

[24] *See Piccarreto v. Mura*, 970 N.Y.S.2d 408, 426 (Sup. Ct. 2013) (distinguishing between charging lien enforcement and disgorgement claims, recognizing they serve different purposes and require different showings); *Cronin v. Chabrowe*, 793 F.Supp.3d 458 (2025) (disgorgement is primarily a public remedy available to government entities rather than to private clients seeking fee recovery).

[25] *See* Appellee's Br. 12–13 (citing authority that deals with claims that were barred by discharge after they were not timely asserted in proofs of claim).

**4.    The Two River Parties had fair grounds to believe they complied with the discharge injunction.**

Nelkin next takes aim at the Two Rivers Parties' contention that they had fair ground to doubt that the February 17 letter was a violation of the discharge injunction. However, those arguments do not meaningfully engage with the Two Rivers Parties' opening brief. Rather, Nelkin works backwards from the Bankruptcy Court's contempt order and treats the Two Rivers Parties' failure to prevail in their arguments below as proof their position was unreasonable from the start.[26]

That is not the correct standard. The question is not whether the Two Rivers Parties correctly understood that the fee-forfeiture dispute was not barred by the discharge injunction—which, for reasons already discussed, they were. Rather, the question is whether the Two Rivers Parties had fair grounds to believe that was the case.

The EDNY's June 8, 2025 order proves that they did. In that order, the court determined that the Two Rivers Parties' discharge defense "do[es] not involve any affirmative claims by the Schreibers against [Nelkin] nor are the Schreibers endeavoring to collect on any potential

---

[26] Appellee's Br. 13–14.

14

debt or obligation from [Nelkin] that would be discharged by the confirmed Plan."[27] The significance of that ruling is not that the Two Rivers Parties relied on the EDNY's ruling—as Nelkin points out, the timing wouldn't work because the order was issued after the Two Rivers Parties sent their letter. Rather, the significance of the order is that a federal judge well acquainted with federal law looked at the facts here and the governing law and reached the same conclusion as the Two Rivers Parties. Nelkin does not explain why the EDNY's ruling was objectively unreasonable or outside the realm of fair debate, and it was no more unreasonable for the Two Rivers Parties to reach the same conclusion based on the governing authority and operative facts.

## 5.    Nelkin's remaining arguments are meritless distractions.

Nelkin's brief ends with a pair of arguments that fail to meaningfully respond to the Two Rivers Parties' arguments for reversal. Neither argument moves the needle.

First, Nelkin contends that the bankruptcy court has power over the EDNY's registry because bankruptcy courts have "exclusive

---

[27] *Id.* at *12 (Appendix 1); Doc. 5-8, at 56; *Schreiber v. Friedman*, No. 15 CV 6861, 2025 WL 1616659, *12 (E.D.N.Y. June 8, 2025) (Appendix 1).

jurisdiction of all property, wherever located, of the debtor."[28] However, Nelkin acknowledges that the bankruptcy court "did not order the EDNY clerk to release the funds" and that courts cannot "physically seiz[e] property held by another,"[29] so it is unclear what action the bankruptcy court took (or hypothetically might take) that Nelkin is trying to defend. To the extent Nelkin advances this argument only to show that the bankruptcy court could make a ruling about the parties' entitlement to the registry funds that the EDNY would be bound to implement, that argument fails for reasons already discussed: Nelkin has not yet established an interest in the registry funds that would bring them within the estate, and they cannot do so in the face of their discharge for cause.[30]

Second, Nelkin contends that the contempt order's "purge provision is a lawful coercive civil-contempt remedy."[31] However, its arguments on this point focus on the reasons Nelkin thinks this remedy could be imposed against the Two Rivers Parties' counsel without creating an

---

[28] Appellee's Br. 15.

[29] Appellee's Br. 15.

[30] *See supra* Part II; Appellants' Br. at Argument Part I.

[31] Appellee's Br. 15.

improper conflict of interest. That argument about the remedy says nothing about the propriety of the bankruptcy court's decision to hold the Two Rivers Parties in contempt in the first place. As discussed above and in the opening brief, the contempt finding was error, so there should have been no remedy imposed at all.

\* \* \*

Throughout its brief, Nelkin relies on a mirror-image version of reality to defend the bankruptcy court's contempt order. In that reality, defenses are really claims, attempts to avoid paying money are actually attempts to receive payment, clients are left without protection against overreach and ethical violations by their former counsel, and courts have one-sided jurisdiction to enforce meritless claims but not to hear valid defenses thereto. In taking that approach, Nelkin reveals that the bankruptcy court's contempt order cannot be sustained under a correct view of the governing law. Accordingly, the Court should reverse the bankruptcy court's contempt order and remand this case so the Two Rivers Parties can pursue their defenses against Nelkin's meritless attempt to recover fees to which it is not legally entitled.

## CONCLUSION

17

Accordingly, the bankruptcy court's contempt order should be reversed and vacated. The Court should also vacate the holding that they must dismiss their defense and interest in the EDNY litigation.

Respectfully submitted,

*/s/ Avi Moshenberg*
Avi Moshenberg
avi.moshenberg@lmbusinesslaw.com
Nick Lawson
nick.lawson@lmbusinesslaw.com
Lawson & Moshenberg PLLC
2301 Commerce Street, Suite 200
Houston, TX 77002
Telephone: (713) 449-9644

***Attorneys for Appellants***

18

## Certificate of Service

I certify that on May 25, 2026, a copy of this document was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic-filing system to all counsel of record who've appeared.

*/s/ Avi Moshenberg*
Avi Moshenberg

## Certificate of Compliance

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h) and any applicable local rules, I certify that:

1. This brief complies with the type-volume limitation of Rule 8015(a)(7) because it contains **2,696** words, excluding the parts of the brief exempted by Rule 8015(g).

2. This brief complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(6) because it has been prepared in a proportionally spaced typeface using **Microsoft Word** in **14-point Century Schoolbook** font.

3. In accordance with Rule 8006(f)(3), I have served or made diligent efforts to serve all parties entitled to notice of this filing by **ECF/CM** on **May 25, 2026**.

*/s/ Avi Moshenberg*
Avi Moshenberg

19